D
F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARY KOUTSAGELOS,

                Appellant,

    -against-

PII SAM, LLC

                Appellee.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-1703 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Appellant Mary Koutsagelos appeals from an order entered by the United States

Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), dated

February 21, 2012, which granted the motion of Appellee PII SAM, LLC ("PII SAM") seeking

annulment of the automatic stay, nunc pro tunc, of the foreclosure proceeding against

Appellant's property. Because the court finds that the Bankruptcy Court's decision to annul the

stay was not an abuse of discretion, Appellant's appeal is DENIED.

**I.    BACKGROUND**

    **A.    Factual History**

    On August 24, 2005, Appellant and her mother, now deceased, secured a consolidated

note and mortgage ("Loan") in the amount of $435,000. (Bankr. Ct. Order (Dkt. 7-2) at 17-18.)

In September 2007, Appellant defaulted on the Loan. (Id. at 18.) Following a foreclosure

proceeding in February 2008, PII SAM received the Loan via assignment. (Id.) On August 12,

2008, Appellant and PII SAM entered into a stipulation of forbearance. (Id.)

    On January 15, 2010, the stipulation expired due to Appellant's failure to comply with

the terms of forbearance. (Id. at 19.) PII SAM subsequently scheduled a foreclosure sale for

1

April 30, 2010. (Id.) On April 15, 2010, Appellant filed a petition for bankruptcy pursuant to Chapter 13 (a "Chapter 13 petition") of Title 11 of the United States Code (the "Bankruptcy Code"), which stayed the foreclosure sale. (Id.) A Chapter 13 case followed and was dismissed in September 2010 due to filing deficiencies, failure to make post-petition mortgage payments, and failure to provide full payment to PII SAM as required by section 1325(a)(5) of the Bankruptcy Code. (Id. at 19-20.)

PII SAM again scheduled a foreclosure sale for October 22, 2010. (Id. at 20.) One day prior to the scheduled sale, Appellant moved to stay the sale, this time by filing a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Id.) A Chapter 7 case followed, and was dismissed. (Id.)

On April 29, 2011, PII SAM for the third time scheduled a foreclosure sale. (Id.) Shortly before the scheduled sale, Appellant filed an order to show cause in state court, seeking to stay the sale. (Id.) On May 20, 2011, the state court denied Appellant's request for a stay of the sale. (Id.)

On July 15, 2011, PII SAM scheduled a fourth date for the foreclosure sale. (Id. at 21.) On July 7, 2011, Appellant again filed an order to show cause in state court to stay the sale. (Id.) On September 28, 2011, the state court again denied Appellant's request. (Id.)

Finally, PII SAM for the fifth time scheduled a foreclosure sale, planned for December 2, 2011. (Id.) Two days before, on November 30, 2011, Appellant filed another Chapter 13 petition (the "Petition"), thus invoking an automatic stay of any action against her property. (Id.) PII SAM apparently was unaware of the filing of Appellant's Petition because it was not properly given notice. (Id. at 22.) On December 2, 2011, PII SAM proceeded with a foreclosure sale of Appellant's property, and PII SAM ultimately purchased the property itself. (Id.)

### B. Procedural History and Bankruptcy Court Decision

On January 19, 2012, PII SAM filed a motion in the Bankruptcy Court to annul the automatic stay resulting from Appellant's Petition of November 30, 2011, or, in the alternative, to lift the stay pursuant to section 362(d)(1) of the Bankruptcy Code. (Id. at 16, 22.) On January 26, 2012, Appellant filed an affidavit in opposition to the motion, to which PII SAM replied on February 10, 2012. (Id. at 16-17.) Appellant sur-replied on February 13, 2012. (Id. at 17.)

On February 14, 2012, the Bankruptcy Court held a hearing concerning PII SAM's January 19, 2012, motion for relief from the automatic stay. (See id. at 1-28.) Following the hearing, the Bankruptcy Court on February 21, 2012, granted PII SAM's motion for annulment of the automatic stay and denied Appellant's request for a stay pending appeal. (Id. at 28.)

The Bankruptcy Court found that Appellant had filed her Petition in "bad faith in the sense of a misuse of Chapter 13" due to her failure to: (1) file a certificate indicating completion of a budget and credit course within 180 days of filing her Petition, as required by sections 109(h)(1) and 521(b) of the Bankruptcy Code; (2) file schedules, statements of affairs, and a plan within fourteen days of filing her Petition, as required by sections 1007(c) and 3015(b) of the Bankruptcy Code; (3) attend a section 341 meeting; (4) include the correct address of PII SAM on either the Schedule D form or the creditor matrix filed with the Bankruptcy Court; (5) disclose the original April 15, 2010, Chapter 13 petition until the afternoon of the day before the hearing; and (6) make post-Petition mortgage payments. (See id. at 23-25.)

These deficiencies, the Bankruptcy Court concluded, evinced "a classic bad-faith Chapter 13 filing." (Id. at 25.) The Bankruptcy Court noted that Appellant had been "virtually oblivious to fundamental obligations required of a debtor in [a] Chapter 13 [filing] and debtors in general in bankruptcy cases," and that it was "abundantly clear that . . . the incentive that [drove

3

Appellant's] filing . . . was not to propose, confirm and complete a Chapter 13 plan," but instead "to litigate asserted claims against [PII SAM]." (Id.)

On July 5, 2012, Appellant filed an appeal to this court, arguing that the Bankruptcy Court's annulment of the automatic stay was an abuse of discretion for two reasons: (1) the Bankruptcy Court did not apply the correct legal standard in electing to grant nunc pro tunc relief from the stay; and (2) the Bankruptcy Court's finding that Appellant exercised bad faith in the filing of her Petition was clearly erroneous.[1] (See Appellant Br. (Dkt. 7) at 10-15.)

## II. STANDARD OF REVIEW

Federal district courts have jurisdiction to hear appeals from judgments, orders, and decrees of bankruptcy judges. Fed. R. Bankr. P. 8013. A district court should "review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous, but reviewing its conclusions of law de novo." In re MarketXT Holdings Corp., 346 F. App'x 744, 745 (2d Cir. 2009) (citing Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)).

In the specific context of reviewing a bankruptcy court's decision to grant relief from the automatic stay nunc pro tunc, the bankruptcy court's actions are reviewed for abuse of discretion, which exists when a bankruptcy court's decision either "rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding" or "cannot be located within the range of permissible decisions." In re Aquatic Dev. Grp., Inc., 352 F.3d 671, 678 (2d Cir. 2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)); see also In re Marketxt Holdings, Corp., 428 B.R. 579, 585 (S.D.N.Y. 2010) (applying abuse of discretion standard in context of bankruptcy court's retroactive annulment of automatic stay).

---

[1]     Appellant filed her brief on July 5, 2012 (Dkt. 7) and Appellee filed its opposition on October 1, 2012 (Dkt. 13). Appellant requested and was granted an extension to file her reply until November 25, 2012. (Oct. 23, 2012, Order (Dkt. 14)). On April 25, 2013, the court noted that the docket reflected no case activity in the intervening five months and instructed Appellant to file her reply, if any, by May 23, 2013. As no reply was filed as of June 3, 2013, the court relies upon Appellant's moving brief and Appellee's opposition to decide the motion.

4

## III.  DISCUSSION

As set forth above, a district court may overturn a decision of a bankruptcy court to grant relief from an automatic stay only if the district court determines that the bankruptcy court has abused its discretion.  See Aquatic Dev. Grp., Inc., 352 F.3d at 678.  Appellant argues that the Bankruptcy Court's order granting annulment of the November 30, 2011, automatic stay nunc pro tunc (thus validating the December 2, 2011, foreclosure proceeding against her property) was in error for two reasons:  (1) the Bankruptcy Court did not apply the correct legal standard in electing to grant nunc pro tunc relief from the stay; and (2) the Bankruptcy Court's finding that Appellant exercised bad faith in the filing of her Petition was clearly erroneous.  (See Appellant Br. at 10-15.)  These arguments fail.

### A.    Nunc Pro Tunc Relief from the Automatic Stay

Appellant first argues that the Bankruptcy Court "abused its discretion and misconstrued the law" because, in granting annulment of the automatic stay, the Bankruptcy Court did not apply the correct legal standard for nunc pro tunc relief.  (See id. at 11.)

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ."  11 U.S.C. § 362(a)(1).

The automatic stay "affords debtors a 'breathing spell' from the collection process and enables them to attempt a repayment or reorganization plan to satisfy existing debt."  E. Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998) (citation omitted).  The automatic stay "is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur

after the automatic stay takes effect." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994).

Under certain circumstances, however, a bankruptcy court may take measures that grant relief from the automatic stay, including "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d). An "annulment" of the automatic stay grants retroactive relief, thereby validating past proceedings or actions that would otherwise be deemed void. E. Refractories Co. Inc., 157 F.3d at 172. "Although granting retroactive relief from the stay undisputedly falls within the powers of a bankruptcy court, courts should use this power sparingly, and only under compelling circumstances." In re Ebadi, 448 B.R. 308, 319 (Bankr. E.D.N.Y. 2011).

On November 30, 2011, Appellant filed the Petition at issue here. (Bankr. Ct. Order at 21.) The immediate effect of this filing was to stay any foreclosure proceeding against her property. See 11 U.S.C. § 362(a)(1). Apparently unaware of this stay due to lack of proper notice, PII SAM proceeded with the scheduled December 2, 2011, foreclosure sale of Appellant's property and ultimately purchased the property itself. (Bankr. Ct. Order at 22.) In light of the automatic stay, the foreclosure sale of Appellant's property normally would be "void and without vitality." Rexnord Holdings, Inc., 21 F.3d at 527. However, the Bankruptcy Court annulled the stay in its order of February 21, 2012, thereby retroactively validating the foreclosure sale. See E. Refractories Co. Inc., 157 F.3d at 172.

The Second Circuit has not explicitly set forth particular factors that bankruptcy courts must analyze before granting relief from the automatic stay. Rather, bankruptcy courts are advised to adopt a holistic approach, where "the facts of each [case] will determine whether relief is appropriate under the circumstances." In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999) (internal quotations and citation omitted). Of particular importance here, a finding of bad faith

6

alone, even without the express consideration of other factors, has been deemed sufficient to grant relief from an automatic stay. See Corto v. Nat'l Scenery Studios, 1997 WL 225124 (Table), at *1 (2d Cir. 1997) (affirming bankruptcy court's lifting of automatic stay nunc pro tunc where debtor's petition was "collusive and filed in bad faith"); In re Plagakis, No. 03-CV-0728 (SJ), 2004 WL 203090, at *5 (E.D.N.Y. Jan. 27, 2004) ("[T]he Bankruptcy Court correctly found that Debtor's bad faith in filing for Chapter 13 relief justified dismissing his petition nunc pro tunc in order to validate the mortgage foreclosure sale.").

Appellant argues that the Bankruptcy Court "miscalculated and misapplied the prevailing law regarding standards to be satisfied before granting a relief from [the] stay on a nunc pro tunc basis" in deciding to annul the automatic stay because of the existence of bad faith. (Appellant Br. at 10.) She further argues the Bankruptcy Court "did not elaborate or suggest any binding circuit precedent." (Id. at 7.)

Appellant is incorrect. The crux of the Bankruptcy Court's order rests on its finding of bad faith. (See Bankr. Ct. Order at 25 ("All of these [factors] are flags of bad faith; bad faith in the sense of a misuse of Chapter 13."); id. ("This is a classic bad-faith Chapter 13 filing[.]").) As dictated by the Second Circuit, a bankruptcy court must evaluate the facts of each case to determine whether relief is appropriate under the circumstances. In re Mazzeo, 167 F.3d at 142. Here, the Bankruptcy Court examined the facts and found bad faith based on multiple indicia. (See Bankr. Ct. Order at 25.) This is an entirely appropriate basis upon which to grant nunc pro tunc relief from the automatic stay. See Corto, 1997 WL 225124, at *1; In re Plagakis, 2004 WL 203090, at *5. In the absence of controlling law requiring express analysis of other or additional factors, the Bankruptcy Court appropriately applied the relevant legal standard in basing its decision upon a finding of bad faith.

7

## B.    Bad Faith Filing of the Petition

Appellant next argues that even assuming the Bankruptcy Court applied the correct legal

standard in granting nunc pro tunc relief from the automatic stay, the Bankruptcy Court abused

its discretion in finding that Appellant exercised bad faith in the filing of her Petition. (See

Appellant Br. at 15.)

Section 1325(a)(3) of the Bankruptcy Code requires a debtor to exercise "good faith" in

filing a bankruptcy petition. 11 U.S.C. § 1325(a)(3). The Second Circuit has identified eight

factors that evince a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors
> whose claims are small in relation to those of the secured creditors; (3) the
> debtor's one asset is the subject of a foreclosure action as a result of arrearages or
> default on the debt; (4) the debtor's financial condition is, in essence, a two party
> dispute between the debtor and secured creditors which can be resolved in the
> pending state foreclosure action; (5) the timing of the debtor's filing evidences an
> intent to delay or frustrate the legitimate efforts of the debtor's secured creditors
> to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't
> meet current expenses including the payment of personal property and real estate
> taxes; and (8) the debtor has no employees.

In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997) (citation omitted). These factors

are to be considered in light of all the circumstances surrounding the debtor's case, and the

absence or presence of one or more factors is not determinative. See Plagakis, 2004 WL 203090,

at *4 ("A good faith determination focuses on the totality of the circumstances in determining

whether the debtor displayed honesty of intention, and requires a bankruptcy court to inquire

whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy

Code, or otherwise proposed the plan be in an inequitable matter." (internal quotations omitted)).

In resting its decision to annul the automatic stay upon the "classic bad faith" filing of

Appellant's Petition (Bankr. Ct. Order at 25), the Bankruptcy Court considered a variety of

factors, including Appellant's continuous violations of various provisions of the Bankruptcy

8

Code. (See id. at 23-25.) The Bankruptcy Court noted that Appellant had failed to: (1) file a certificate indicating completion of a budget and credit counseling course within 180 days of filing her Petition, as required by sections 109(h)(1) and 521(b) of the Bankruptcy Code; (2) file schedules, statements of affairs, and a plan within fourteen days of filing her Petition, as required by sections 1007(c) and 3015(b) of the Bankruptcy Code; (3) attend a section 341 meeting; (4) include the correct address of PII SAM on either the Schedule D form or the creditor matrix filed with the Bankruptcy Court; (5) disclose the original April 15, 2010, Chapter 13 petition until the afternoon of the day before the hearing; and (6) make post-Petition mortgage payments. (Id.) The Bankruptcy Court further noted that, in addition to Appellant's failure to comply with the Bankruptcy Code, it was "abundantly clear" that Appellant's intent, reflected in part by her serial filings (including three petitions and two orders to show cause), was "not a Chapter 13 purpose." (Id. at 22.)

In determining that the filing of Appellant's Petition was in bad faith, the Bankruptcy Court properly considered the facts surrounding Appellant's case. Contrary to Appellant's assertion, the Bankruptcy Court's factual findings are not "clearly erroneous," nor is the Bankruptcy Court's finding of bad faith outside "the range of permissible decisions." Aquatic Dev. Grp., Inc., 352 F.3d at 678; see, e.g., In re Bridge to Life, Inc., No. 05-CV-5499 (CPS), 2006 WL 1329778, at *4 (E.D.N.Y. May 16, 2006) ("Given the undisputed chronology of scheduled Property foreclosure sales and bankruptcy filings . . . the bankruptcy court's finding of bad faith can hardly be characterized as clearly erroneous." (citation omitted)); In re Felberman, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995) ("The filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code. Serial filings are a badge of bad faith, as are petitions filed to forestall

creditors."). The Bankruptcy Court explained that its finding of bad faith was based on a litany of factors, including serial bankruptcy filings and a failure to comply with several requirements of those filings. (See, e.g., Bankr. Ct. Order at 22-25.) Accordingly, the Bankruptcy Court did not abuse its discretion in its finding of bad faith.

## IV.    CONCLUSION

For the foregoing reasons, the court finds that the Bankruptcy Court's February 21, 2012, order annulling the automatic stay nunc pro tunc did not misapply the relevant law and was not an abuse of discretion. Appellant's motion to appeal the order therefore is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    June 4 , 2013

NICHOLAS G. GARAUFIS
United States District Judge